**Douglas M. HARTMAN, Petitioner,**

v.

**William L. SUMMERS, Warden, and the Attorney General of the State of California, Respondent.**

**No. CV94–0101–IH(AJW).**

United States District Court,
C.D. California.

March 30, 1995.

Ronald L. Hartman, Joseph Rhine, Ronald L. Hartman Law Offices, Santa Monica, CA, for petitioner.

Donald J. Oeser, Deputy Atty. Gen., Jaime L. Fuster, Emilio Eugene Varanini, IV, CAAG Office of Atty. Gen. of California, Los Angeles, CA, for respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

IRVING HILL, District Judge.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court has reviewed the petition, all of the records and files in this action, the attached Report and Recommendation of the United

States Magistrate Judge, and the objections to the Report and Recommendation. The Court concurs with and adopts the findings of fact, conclusions of law, and recommendations of the Magistrate Judge after having made a de novo determination of the portions to which objections were directed.[1]

IT IS ORDERED that the petition filed in this action is dismissed with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of the Order Adopting Report and Recommendation and the Judgment by United States mail on counsel for the parties.

LET JUDGMENT BE ENTERED ACCORDINGLY.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE [1]

WISTRICH, United States Magistrate Judge.

Petitioner is an insanity acquittee who is confined in a state mental hospital. He challenges the constitutionality of the California statutes regulating the release of insanity acquittees, and a state trial judge's refusal to apply the doctrine of imperfect self-defense. Neither challenge possesses sufficient merit to justify issuance of a writ of habeas corpus.

### BACKGROUND

Petitioner was convicted in the Superior Court of the State of California, County of Los Angeles, of three counts of assault with a deadly weapon and one count of second degree murder. On May 16, 1991, petitioner was found not guilty by reason of insanity. Thereafter, petitioner was committed to Patton State Hospital where he remains to this day.

Petitioner filed a petition for a writ of habeas corpus with the Superior Court of the State of California, County of San Bernardino on April 9, 1993. [Return, Ex. B]. The petition was denied on June 14, 1993. [Return, Ex. C]. On August 2, 1993, petitioner filed a petition for a writ of habeas corpus with the Supreme Court of California. [Return, Ex. D]. The Supreme Court of California denied the petition without citation to authority, on December 2, 1993.[2]

### PETITIONER'S CONTENTIONS

Petitioner alleges the following grounds for relief:

(1) Petitioner is being illegally confined in violation of (a) the guarantee of due process of law, (b) the guarantee of equal protection of the laws, and (c) the prohibition against cruel and unusual punishment, all as a result of California's statutory scheme for restoration of sanity and release procedures for persons found not guilty by reason of insanity. [Petition at 6–7].

(2) The statutory scheme for California's conditional release program is an unlawful delegation of legislative and judicial power. [Petitioner's Points and Authorities in Support of Petition at 21].

(3) The trial court misapplied the doctrine of imperfect self-defense, and erroneously found petitioner guilty of second degree murder. [Petition at 6a].

### DISCUSSION

**I. Petitioner has exhausted his state remedies.**

A person in state custody must exhaust his available state remedies before pe-

---

1. Since the Magistrate Judge issued his Report and Recommendation in this case, a California Appellate Court has filed an opinion construing Penal Code § 1026.5(b), which is one of the statutes dealt with in the Report and Recommendation. The California appellate opinion is in accord with the construction made by the Magistrate Judge in this case. People v. Wilder, 33 Cal.App.4th 90, 39 Cal.Rptr.2d 247 (Cal.App. 4 Dist., 1995).

1. This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

2. When the California Supreme Court denies a petition without discussion it is assumed that the petition was denied on the merits. Thompson v. Procunier, 539 F.2d 26, 28 (9th Cir.1976); see also Harris v. Superior Court, 500 F.2d 1124, 1128–29 (9th Cir.1974) (en banc) (post card denial sufficient for purposes of exhaustion).

titioning for writ of habeas corpus in federal court. 28 U.S.C. § 2254(b) & (c); *Bland v. California Department of Corrections,* 20 F.3d 1469, 1472 (9th Cir.1994); *Henry v. Estelle,* 993 F.2d 1423, 1425 (9th Cir.1993), *rev'd on other grounds sub nom. Duncan v. Henry,* —— U.S. ——, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995). "Principles of comity and deference underlie the exhaustion requirement, which assures that the state courts will have the first opportunity to pass upon and correct alleged violations of state prisoners' federal rights." *Henry,* 993 F.2d at 1425 (quoting *Wilwording v. Swenson,* 404 U.S. 249, 250, 92 S.Ct. 407, 409, 30 L.Ed.2d 418 (1971)). The exhaustion requirement is satisfied when the substance of a petitioner's federal claim has been fairly presented to the state's highest court. *Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989); *Bland,* 20 F.3d at 1473; *Henry,* 993 F.2d at 1425. A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which the claim is based. *Bland,* 20 F.3d at 1473; *Henry,* 993 F.2d at 1425. The petitioner also must have presented the claim in a procedural posture rendering it eligible for decision on the merits. *Hughes v. Idaho State Bd. of Corrections,* 800 F.2d 905, 906 (9th Cir.1986); *McQuown v. McCartney,* 795 F.2d 807, 809 (9th Cir. 1986).

▇ A state prisoner is not, however, required to repetitively seek relief in state courts after the highest state court has reviewed his case. *Humphrey v. Cady,* 405 U.S. 504, 516 n. 18, 92 S.Ct. 1048, 1056 n. 18, 31 L.Ed.2d 394 (1972). Thus, when a state changes the underlying substantive law relating to the federal issue after the highest state court has reviewed a habeas corpus petition, re-exhaustion is not necessary.[3] *Roberts v. LaVallee,* 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967); *Briggs v. Raines,* 652 F.2d 862 (9th Cir.1981); *Deters v. Collins,* 985 F.2d 789, 796 (5th Cir.1993), citing *Galtieri v. Wainwright,* 582 F.2d 348, 355 (5th Cir.1978).

In *Roberts,* for example, an indigent defendant was not provided with his preliminary hearing transcript because he could not pay the required fee, and the state affirmed his conviction. After the defendant filed a habeas corpus petition in federal court, the highest state court ruled that the statute requiring a fee was unconstitutional as applied to indigents. The Second Circuit dismissed the petition, holding that the petitioner must return to the state court to take advantage of the changed state law. The Supreme Court vacated and remanded, holding that the petitioner had thoroughly exhausted his remedies. *Roberts,* 389 U.S. at 42–43, 88 S.Ct. at 196. The Court concluded that "[s]till more state litigation would be both unnecessarily time-consuming and otherwise burdensome." *Roberts,* 389 U.S. at 43, 88 S.Ct. at 196.

Similarly, in *Francisco v. Gathright,* 419 U.S. 59, 95 S.Ct. 257, 42 L.Ed.2d 226 (1974), a state prisoner sought habeas corpus relief, challenging the constitutionality of the state statute under which he had been convicted. The petitioner had presented his constitutional claims to the highest state court, which denied review. Prior to the petitioner's filing a habeas corpus petition in federal court, the highest state court held the statute invalid. The Fourth Circuit held that the state court should have an opportunity to re-examine the petitioner's claim in light of the new law. The Supreme Court reversed, holding that where the state courts had received a fair opportunity to determine the constitutional validity of the state statute at issue, the petitioner would not be required to resubmit his constitutional claim to the state courts for reconsideration based upon the intervening change in state law. *Francisco,* 419 U.S. at 63, 95 S.Ct. at 259–60.

Finally, in *Briggs,* the petitioner claimed that the prosecution had failed to turn over certain information in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The state supreme court rejected the claim and affirmed peti-

---

**3.** Where there has been an intervening change in *federal* law that has cast the legal issues in a fundamentally different light, a petitioner may be required to resubmit his claim to the highest

state court. *Hudson v. Rushen,* 686 F.2d 826, 830 (9th Cir.1982), citing *Blair v. California,* 340 F.2d 741 (9th Cir.1965).

tioner's conviction. Subsequently, the relevant state law changed, placing an obligation on the state to disclose information to a criminal defendant. The state contended that, given the change in law, the petitioner was required to return to the state courts prior to seeking federal habeas corpus relief. Relying on *Roberts* and *Francisco*, the Ninth Circuit rejected this contention and found that the petitioner had adequately exhausted his state remedies. *Briggs,* 652 F.2d at 864–65.

Prior to seeking relief in this Court, petitioner provided the California Supreme Court with a full and fair opportunity to determine all of the federal constitutional issues contained in his petition. Subsequent to the California Supreme Court's denial of petitioner's state petition, Section 1026.2 was amended on two separate occasions. In 1993, the California legislature amended Section 1026.2 by requiring *both* dangerousness and mental illness in order for continued confinement of an insanity acquittee. Prior to the amendment, continued confinement of insanity acquittees could be based upon a finding of dangerousness alone. In 1994, the California legislature amended the portion of Section 1026.2 which required an insanity acquittee to serve a full year in the conditional release program prior to obtaining a trial on his restoration to sanity. The amendment provides that an insanity acquittee does not have to complete a year in the program prior to obtaining a trial. Rather, the acquittee is entitled to a trial to determine restoration to sanity if, during the one-year program, the community program director opines that the

acquittee is no longer dangerous due to mental defect and submits a report of his opinion to the court and other interested parties.

In light of the foregoing cases, the changes that were made to Section 1026.2 after petitioner's petition to the California Supreme Court was denied do not require re-exhaustion.[4] The policies underlying the exhaustion requirement would not be furthered by requiring petitioner to resubmit his claims to the state courts.[5] The Court, therefore, finds that petitioner has exhausted his state remedies and declines to require him to re-exhaust based upon the recent amendments to Penal Code § 1026.2.

## II. Section 1026.2 does not violate the United States Constitution.

Petitioner's constitutional challenge to Section 1026.2 is based almost entirely upon his reading of the decision in *Foucha v. Louisiana,* 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). Thus, a thorough understanding of both Section 1026.2 and the *Foucha* decision is necessary in order to resolve petitioner's claims.

### A. California Penal Code Section 1026.2

As amended in 1993, Section 1026.2 provides that a person found not guilty by reason of insanity may apply for release upon the ground that his or her sanity has been restored. The relevant portion of Section 1026.2(e) provides a two-step process for handling an application for release. *Barnes v. Superior Court,* 186 Cal.App.3d 969, 973,

---

**4.** Respondent offers no basis for distinguishing between a change in state case law and an amendment of a state statute in this context.

**5.** In *Roberts,* after concluding that the petitioner had exhausted his state remedies, the Court noted in dicta that "[t]his is not a case in which there is any substantial state interest in ruling once again on petitioner's case." *Roberts,* 389 U.S. at 43, 88 S.Ct. at 196. To the extent this language may limit the holding in *Roberts,* it does not alter the Court's conclusion in this action.

As in *Roberts,* there is no reason why the state of California would have a substantial interest in deciding petitioner's claims again. One of the amendments to Section 1026.2 was designed to bring California law into conformity with *Foucha v. Louisiana,* 504 U.S. 71, 112 S.Ct. 1780, 118

L.Ed.2d 437 (1992), by requiring a showing of both dangerousness and mental illness in order for the state to continue confining a person acquitted by reason of insanity. That amendment to the statute apparently cured one of the defects that the Supreme Court found in the Louisiana statute at issue in *Foucha,* and, consequently, one of the grounds upon which petitioner attacked the California statute has been eliminated. By denying petitioner's state petition, the California Supreme Court found the statute constitutionally permissible before it was amended in an attempt to bring it into compliance with *Foucha.* It is illogical to expect that the California Supreme Court would hold the statute unconstitutional *after* such an amendment was made.

231 Cal.Rptr. 158 (1986). First, the state court must hold a hearing to determine whether the insanity acquittee would be "a danger to the health and safety of others, due to mental defect, disease, or disorder," while under supervision and treatment in the community.[6] Upon finding that the acquittee will not be a danger due to mental defect while under supervision and treatment in the community, the court is required to place the acquittee in a conditional release program for one year. Second, the state court must hold a trial to determine whether the insanity acquittee has been restored to sanity and, therefore, unconditional release should be granted. The trial may be held prior to the completion of one year in the conditional release program if, at any time *during* the conditional release program, the community program director forms the opinion that the acquittee is "no longer a danger to the health and safety of others, due to mental defect, disease, or disorder" and submits a report of his opinion and recommendations to the committing court, the prosecuting attorney, and the attorney for the insanity acquittee.[7]

█ An insanity acquittee is entitled to a jury trial at his sanity-restoration hearing. *People v. Tilbury,* 54 Cal.3d 56, 68, 284 Cal. Rptr. 288, 813 P.2d 1318 (1991) ("we assume that juries at sanity-restoration hearings have become part of California's current statutory scheme"), discussing *In re Franklin,* 7 Cal.3d 126, 148, 101 Cal.Rptr. 553, 496 P.2d 465 (1972). It is only at the outpatient status hearing—where a court determines whether the insanity acquittee is entitled to participate in the conditional release program—that a jury trial is not provided. *Tilbury,* 54 Cal.3d at 68–69, 284 Cal.Rptr. 288.

█ The burden of proof in any hearing under the section is on the insanity acquittee, who must demonstrate by a preponderance of the evidence that he is either no longer mentally ill or no longer dangerous. Cal.Pe-

nal Code § 1026.2(k); *People v. Sword,* 29 Cal.App.4th 614, 624, 34 Cal.Rptr.2d 810, 815–16 (1994) (holding that, in an outpatient status hearing, the insanity acquittee has the burden of proving, by a preponderance of the evidence, that he is either no longer mentally ill or not dangerous).

Pending a hearing under Section 1026.2, the community program director considers a summary of the acquittee's programs of treatment and designates a facility within a reasonable distance from the court in which the acquittee is detained. The facility designated "shall provide adequate security, and shall, to the greatest extent possible, minimize interference with the person's program of treatment." Cal.Penal Code § 1026.2(b). A county jail may not be designated unless treatment is provided and the accommodations sufficiently ensure both the safety of the insanity acquittee and the safety of the general population of the jail. Cal.Penal Code § 1026.2(c).

Finally, so long as the insanity acquittee remains both dangerous and mentally ill, the state can continue to confine him no longer than the maximum term of commitment (as determined by the longest term of imprisonment which could have been imposed for the offense of which the person was convicted), unless the person is recommitted. Cal.Penal Code § 1026.5. Under Section 1026.5, insanity acquittee may be recommitted for a maximum of two additional years if a judge or jury finds that he represents a substantial danger of physical harm to others by reason of a mental disease, defect or disorder. The procedure for recommitment requires the following: (1) the treating physician submits his opinion as to whether the insanity acquittee represents a substantial danger of physical harm to others by reason of mental illness; (2) the prosecuting attorney then files a petition to extend commitment in the Superior

---

**6.** No hearing on an application is allowed until the insanity acquittee has been confined or placed on outpatient status for at least 180 days from the date of the order of commitment. Cal.Penal Code § 1026.2(d).

**7.** As discussed, under the 1993 version of the law, the insanity acquittee had to complete one year in the conditional release program prior to

obtaining a restoration of sanity trial. Senate Bill 1487, which was signed by the Governor of California on September 28, 1994, amended Section 1026.2. Under the statute as amended, an insanity acquittee is no longer required to serve a full year in the conditional release program prior to obtaining a trial.

Court which issued the original commitment; (3) a hearing is held at which the rules of discovery in criminal cases apply, and the insanity acquittee is entitled to all of the rights guaranteed under the federal and state constitutions, including the right to an attorney and the right to a jury trial.[8] The state may not continue to confine the insanity acquittee after the two years have expired unless another recommitment is obtained pursuant to the same procedure.[9]

## B. Foucha v. Louisiana

In *Foucha*, the Supreme Court struck down a Louisiana statute that permitted the state to confine insanity acquittees for an indefinite duration based on the ground of "dangerousness" alone. In other words, the Louisiana statute provided for the continued confinement of insanity acquittees who were not mentally ill but who could not prove that they were no longer dangerous. A majority held that the statute violated the Due Process Clause of the Fourteenth Amendment, and a plurality concluded that the statute also violated the Equal Protection Clause of the Fourteenth Amendment.

In discussing the due process issue, the Supreme court noted that once the defendant establishes by a preponderance of the evidence that he is not guilty by reason of insanity, the state is entitled to infer that, at the time of the verdict, the defendant is still both mentally ill and dangerous. Therefore, the state may initially commit a defendant without satisfying the clear and convincing evidence burden of proof for civil commitment set forth in *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). *Foucha*, 504 U.S. at 75–76, 112 S.Ct. at 1783. The Court then cited *Jones v. United States*, 463 U.S. 354, 363, 103 S.Ct. 3043, 3049, 77 L.Ed.2d 694 (1983), for the proposition that a committed acquittee is entitled to

release "when he has recovered his sanity or is no longer dangerous, ... i.e. the acquittee may be held as long as he is both mentally ill and dangerous, but no longer." *Foucha*, 504 U.S. at 77, 112 S.Ct. at 1784. Because it was conceded that Foucha no longer suffered from a mental illness, he could no longer be held as an insanity acquittee. The Court concluded that since the state could not continue to confine Foucha after he was found to be sane, it was required to provide Foucha with "constitutionally adequate procedures to establish the grounds for his confinement." *Foucha*, 504 U.S. at 79, 112 S.Ct. at 1785.

With regard to the equal protection issue, the plurality began by acknowledging that *Jones* and other cases have held that treating insanity acquittees differently in some respects from persons subject to civil commitment is *not* a violation of the Equal Protection Clause. *Foucha*, 504 U.S. at 85–86, 112 S.Ct. at 1788. But, since Foucha was no longer insane, the original basis for confinement no longer existed. The state did not attempt to base its continued confinement of other categories of persons (such as convicted criminals who have reached the end of their sentences) upon their inability to prove they would not be dangerous. Thus, according to the plurality, the state discriminated against Foucha by continuing to confine him based upon dangerousness alone. *Foucha*, 504 U.S. at 85–86, 112 S.Ct. at 1788.

## C. Due process

Petitioner contends that he is being denied due process as a result of his continued commitment to a mental institution despite the fact that he is no longer a danger to himself or others. [Petitioner's Points & Authorities at 5]. Petitioner announces that he does not contend that he is no longer mentally ill. Rather, his argument is based upon

8. Section 1026.5(b)(7) provides that an insanity acquittee subject to a recommitment petition is "entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings." In criminal proceedings, the Due Process Clause requires that the state bear the burden of proving every ingredient of an offense beyond a reasonable doubt. *Patterson v. New York*, 432 U.S. 197, 215, 97 S.Ct. 2319, 2329, 53 L.Ed.2d 281 (1977). Thus, at the conclusion of

the insanity acquittee's maximum term of confinement, the burden of proof shifts to the state.

9. Some of the provisions in the 1993 version of Section 1026.2 were originally intended to be operative only until January 1, 1995. Senate Bill 1487, however, deleted the repeal dates of certain provisions, thereby extending the application of the amended section indefinitely.

his contention that he is not dangerous. [Petitioner's Points & Authorities at 8 n. 2].

■ *Foucha* clearly held that a state may not continue to confine an insanity acquittee unless he is *both* dangerous and mentally ill. In 1993, California amended Section 1026.2 to allow continued confinement of an insanity acquittee only if he would pose a danger to the community *due* to a mental disease, defect, or disorder.[10] Thus, an insanity acquittee is entitled to release if he can show either that he is not dangerous to the community or that he is no longer mentally ill.

Petitioner argues that he is no longer dangerous, and, therefore, that his continued confinement violates due process under *Foucha*. Petitioner's reliance upon *Foucha*, however, is misplaced. Petitioner's case is factually distinguishable from *Foucha*. In *Foucha*, the state *conceded* that Foucha was no longer mentally ill, but sought to confine him based solely upon his dangerousness. The fact that Foucha was admittedly no longer mentally ill was crucial to the Supreme Court's decision. In contrast, it has not been established that petitioner is no longer dangerous. Respondent does not concede the fact, and no court has found that petitioner is not dangerous. Furthermore, it has not been established that petitioner is no longer mentally ill. Indeed, even petitioner does not contend that he is no longer mentally ill. Thus, as the record presently stands, petitioner's current confinement is based upon *both* mental illness and dangerousness.[11]

Petitioner may apply for release from Patton State Hospital pursuant to Section 1026.2, and is entitled to a hearing under Section 1026.2(e). If, as petitioner argues, he is no longer dangerous, petitioner would be entitled to immediate placement in a conditional release program. In addition, either at the conclusion of one year in the program, or sooner if the program director makes such

a recommendation, petitioner will receive a trial to determine whether restoration of sanity and unconditional release should be granted.

Unlike the Louisiana statute struck down in *Foucha*, the California statute does not permit the state to hold an insanity acquittee who is found either not mentally ill or not dangerous. For this reason, Section 1026.2 does not contravene the requirements of due process as established by the Supreme Court in *Foucha*.

Petitioner also contends that placing the burden of proof on the insanity acquittee violates due process. He reads the Supreme Court's remark that the state may also confine a mentally ill person if it shows "by clear and convincing evidence that the individual is mentally ill and dangerous," *Foucha*, 504 U.S. at 80, 112 S.Ct. at 1786, as creating a requirement that the state prove by clear and convincing evidence that an insanity acquittee remains both mentally ill and dangerous. [Supplemental Traverse at 14–20]. After noting that Foucha could no longer be confined as an insanity acquittee, the Court went on to list three possible grounds for confinement—namely, a criminal conviction, civil commitment in accordance with the procedures set forth in *Addington*, or the narrow circumstances permitted under *United States v. Salerno*, 481 U.S. 739, 749, 107 S.Ct. 2095, 2102–03, 95 L.Ed.2d 697 (1987). *Foucha*, 504 U.S. at 79–82, 112 S.Ct. at 1785–86. In some of these circumstances, the Supreme Court noted that the burden of proof was on the state.

It does not follow from this discussion that the Constitution requires the state to carry the burden of proof by clear and convincing evidence in situations where the insanity acquittee remains mentally ill. Rather, the context of that remark reveals a more limited holding. *Foucha* holds that because Foucha could no longer be confined as an insanity

10. The court must determine whether sanity has been restored, "which means the applicant is no longer a danger to the health and safety of others, due to mental defect, disease, or disorder." Cal.Penal Code § 1026.2(e).

11. Petitioner has submitted psychiatric reports opining that petitioner is not dangerous. [Petitioner's Points & Authorities, Exs. A & B]. Re-

gardless of whether the evidence seems persuasive, federal habeas corpus is not the proper proceeding in which to litigate the factual issue of petitioner's dangerousness. Rather, petitioner should present his evidence to the state court pursuant to the procedures set forth in Section 1026.2.

acquittee (that is, because the state did not claim he was still mentally ill), the state could only confine him on the basis of some other permissible ground. *Foucha,* 504 U.S. at 79–80, 112 S.Ct. at 1785. That some or all of these grounds require the state to bear the burden of proof is irrelevant to the question of whether the state must bear it where the petitioner may still be properly confined as an insanity acquittee.

The discussion of due process in *Foucha* is admittedly subject to different interpretations, and lower courts analyzing this portion of *Foucha* have reached different results. In *State v. Tooley,* 875 S.W.2d 110, 113 (1994), the Missouri Supreme Court considered the Missouri statute regarding release of insanity acquittees in light of *Foucha.* That statute placed the burden of proof upon insanity acquittees to prove that they no longer suffer from a mental disease rendering them dangerous to themselves or others. *Tooley,* 875 S.W.2d at 113. The court found the statute constitutional, and distinguished *Foucha* on the basis of Louisiana's acknowledgement that Foucha no longer suffered from a mental disease. The Missouri Supreme Court reasoned that a person found not guilty by reason of insanity may be initially committed without a showing by clear and convincing evidence of mental illness and dangerousness required by *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) for civil commitment. Furthermore, the state could apply a presumption of continuing mental illness pursuant to *Jones,* 463 U.S. at 366, 103 S.Ct. at 3050–51. "So long as the *Jones* presumption of continuing mental illness has not been broken following an acquittal by reason of insanity, the burden of proof need not shift to the state." *Tooley,* 875 S.W.2d at 113.

Similarly, in *Hearne v. United States,* 631 A.2d 52 (1993), the District of Columbia Court of Appeals upheld the District of Columbia statute, which explicitly placed the burden of proof on the insanity acquittee to prove his right to release by a preponderance of the evidence. The court observed that the *Foucha* opinion "proceeded from the postulate of a conceded recovery from mental illness," and did not hold unconstitutional the statutory placement of the burden of proof on the insanity acquittee. *Hearne,* 631 A.2d at 53.

Likewise, the California Court of Appeals recently held that Section 1026.2's placement of the burden of proof on the insanity acquittee complies with due process. *Sword,* 29 Cal.App.4th at 623–24, 34 Cal.Rptr.2d at 815. The court explained that it is reasonable to presume that a defendant's insanity, established by a preponderance of the evidence, continues to the date of trial on the restoration of sanity. *Sword,* 29 Cal.App.4th at 623–24, 34 Cal.Rptr.2d at 815.

On the other hand, in *Application of Noel,* 17 Kan.App.2d 303, 316, 838 P.2d 336 (1992), the Kansas Court of Appeals reached the opposite conclusion. The court first said that *Foucha* "seemed to suggest that continued commitment must be based on a showing of insanity and dangerousness by clear and convincing evidence, with the burden of proof placed on the State." *Noel,* 17 Kan.App.2d at 317, 838 P.2d 336, citing *Foucha,* 504 U.S. at 84–88, 112 S.Ct. at 1788–89. The court then held that the Kansas statutory scheme used to determine the need for continued commitment of insanity acquittees violated both the due process and equal protection clauses of the Fourteenth Amendment because it did not place the burden of proof upon the state to show by clear and convincing evidence both the committed person's continued insanity and dangerousness. The court remedied the defect by "engraft[ing] such requirements into the Kansas statutory scheme." *Noel,* 17 Kan.App.2d at 317, 838 P.2d 336.

The interpretation of *Foucha* adopted in *Tooley, Hearne,* and *Sword* is more consistent with the language of *Foucha* than the interpretation adopted in *Noel.* Further, the conclusions reached in *Tooley, Hearne,* and *Sword* are better reasoned and, consequently, more persuasive than the conclusion reached in *Noel.*

Essentially, the California legislature has determined that an insanity acquittal supports an inference of continuing mental illness and dangerousness. Such an inference is not unreasonable. *See, Jones,* 463 U.S. at 366, 103 S.Ct. at 3050–51 ("It comports with

common sense to conclude that someone whose mental illness was sufficient to lead him to commit a criminal act is likely to remain ill and in need of treatment."); *Foucha,* 504 U.S. at 87, 112 S.Ct. at 1789 (O'Connor, J., concurring) ("Louisiana evidently has determined that the inference of dangerousness drawn from a verdict of not guilty by reason of insanity continues even after a clinical finding of sanity, and that judgment merits judicial deference."). Likewise, in a case pre-dating *Foucha,* the Ninth Circuit held that it is not unreasonable, and therefore, not unconstitutional, for Congress to have determined that an acquittal by reason of insanity supports an inference of continuing mental illness. The Ninth Circuit concluded that the federal statute which places the burden of proof by clear and convincing evidence on an insanity acquittee in a release hearing does not violate due process. *United States v. Phelps,* 955 F.2d 1258, 1267–68 (9th Cir.), *cert. denied,* 504 U.S. 989, 112 S.Ct. 2977, 119 L.Ed.2d 595 (1992); *See* 18 U.S.C. § 4243(f).

■ For these reasons, requiring an insanity acquittee to rebut the presumption of continuing mental illness and dangerousness by a preponderance of the evidence does not violate the Due Process Clause of the Fourteenth Amendment. Instead, California may confine an insanity acquittee until he demonstrates by a preponderance of the evidence that he is either no longer dangerous or no longer mentally ill. *See Tooley,* 875 S.W.2d at 113–14; *Hearne,* 631 A.2d at 53; *Benham v. Ledbetter,* 785 F.2d 1480, 1490–91 (11th Cir.1986) (holding that state law imposing a presumption of continuing insanity upon an insanity acquittee at release hearings did not violate due process so long as presumption was rebuttable).

Finally, petitioner complains that the California statutory scheme unconstitutionally ties the duration of commitment to the duration of the maximum criminal sentence. [Supplemental Traverse at 14]. Petitioner

bases his claim on the Supreme Court's discussion in *Jones:*

> [The insanity acquittee's] confinement rests on his continuing illness and dangerousness. Thus, under the District of Columbia statute, no matter how serious the act committed by the acquittee, he may be released within 50 days of his acquittal if he has recovered. In contrast, one who committed a less serious act may be confined for a longer period if he remains ill and dangerous. There simply is no necessary correlation between severity of the offense and the length of time necessary for recovery. The length of the acquittee's hypothetical criminal sentence therefore is irrelevant to the purpose of his commitment.

*Jones,* 463 U.S. at 369, 103 S.Ct. at 3052.

■ Under the California statute, an insanity acquittee may apply for release after 180 days following his acquittal. Cal.Penal Code § 1026.2(d) ("No hearing upon the application shall be allowed until the person committed has been confined or placed on outpatient status for a period of not less than 180 days from the date of the order of commitment."). This is true regardless of the seriousness of his crime and the corresponding hypothetical sentence. Thus, California has not tied an insanity acquittee's commitment to his maximum hypothetical criminal sentence. Rather, California uses the maximum hypothetical criminal sentence only as a means of determining the point at which the burden of proof as to the acquittee's continuing insanity and dangerousness shifts to the state. The state legislature has determined that the presumption of continuing insanity lasts only as long as the potential criminal sentence, and that, after the expiration of such term, the state must convince a jury beyond a reasonable doubt that the insanity acquittee represents a substantial danger of physical harm to others by reason of a mental disease. Cal.Penal Code § 1026.5. Such a determination does not violate the constitutional principles set forth in either *Jones* or *Foucha.*[12]

12. In fact, the California scheme is more favorable to insanity acquittees than is constitutionally required. Under *Jones,* the presumption of an insanity acquittee's mental illness and danger-ousness may continue indefinitely without violating the Due Process Clause of the Fourteenth Amendment. *Jones,* 463 U.S. at 368–369, 103 S.Ct. at 3051–52. California has opted, instead,

**D. Equal protection**

Petitioner argues that the California statutory scheme violates the Equal Protection Clause because it deprives the insanity acquittee rights afforded other committed persons. In particular, petitioner relies upon the analogy of civil commitment, where the burden of proof by clear and convincing evidence is placed upon the state, and the civil committee is provided with a jury trial. [Petition at 7].

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). The Equal Protection Clause "does not require things which are different in fact or opinion to be treated in law as though they were the same." *Skinner v. Oklahoma,* 316 U.S. 535, 540, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942), (quoting *Tigner v. Texas,* 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124 (1940)).

Generally, state legislation challenged as a denial of equal protection is presumed to be valid and will be upheld so long as the classification drawn by the statute is rationally related to a legitimate state interest. *Cle-burne,* 473 U.S. at 440, 105 S.Ct. at 3254. A statute which classifies by race, alienage, or national origin, however, is subject to strict scrutiny. That is, such laws will be sustained only if they are suitably tailored to serve a compelling state interest. *Cleburne,* 473 U.S. at 440, 105 S.Ct. at 3254. Finally, certain classifications, such as gender, are reviewed under heightened scrutiny. These classifications must be substantially related to the achievement of important governmental objectives. *See Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 456–57, 50 L.Ed.2d 397 (1976). It is not clear which standard of review is applicable to classifications affecting involuntary commitment.[13]

Regardless of the applicable level of scrutiny, the Supreme Court has recognized that states may treat insanity acquittees differently from persons subject to civil commitment because the two groups are not similarly situated. *Foucha,* 504 U.S. at 85–86, 112 S.Ct. at 1788; *see Jones,* 463 U.S. at 370, 103 S.Ct. at 3053 (insanity acquittees are "a special class that should be treated differently from other candidates for commitment.") For example, insanity acquittees may initially be confined without complying with the procedures applicable to civil committees. *Foucha,* 504 U.S. at 76 n. 4, 112 S.Ct. at 1783 n. 4

---

to provide that an insanity acquittee may not be committed beyond the maximum hypothetical *sentence for the underlying crime unless the gov*ernment files a petition for extension of confinement and proves beyond a reasonable doubt that the insanity acquittee is still mentally ill and dangerous. Moreover, the insanity acquittee is entitled to a jury trial in this proceeding. California thereby affords insanity acquittees a more favorable standard than is constitutionally required and it's determination to do so in this manner clearly does not constitute a violation of Due Process.

**13.** The Supreme Court has not explicitly addressed the issue. In *Foucha,* the plurality never identified the standard of review it used. Apparently espousing strict scrutiny, the Court did state that "[f]reedom from physical restraint being a fundamental right, the State must have a particularly convincing reason, which it has not put forward, for such discrimination against insanity acquittees who are no longer mentally ill." *Foucha,* 504 U.S. at 86, 112 S.Ct. at 1788. In *Jones,* however, the Court appeared to espouse a rational relation level of review. *Jones,* 463 U.S.

at 362 n. 10, 103 S.Ct. at 3049 n. 10 (noting that the equal protection argument made by the petitioner duplicated the due process argument, and explaining that "... if the Due Process Clause does not require that an insanity acquittee be given the particular procedural safeguards provided in a civil-commitment hearing under *Addington,* then there necessarily is a rational basis for equal protection purposes for distinguishing between civil commitment and commitment of insanity acquittees."). The Ninth Circuit has suggested that the heightened scrutiny test used in *Craig* is appropriate in such cases. *Hickey v. Morris,* 722 F.2d 543, 546 (9th Cir.1984). In *Hickey,* a class of insanity acquittees contended that the disparity between the Washington statutes governing the procedures for commitment and release of insanity acquittees and civil committees denied them equal protection of the law. The Court, however, declined to decide the appropriate standard because it found that the challenged classification survived even heightened scrutiny. *Hickey,* 722 F.2d at 546. The Court need not resolve the issue in this case, however, because insanity acquittees are not similarly situated to civil committees or mentally disordered offenders.

(discussing *Jones,* 463 U.S. at 364, 103 S.Ct. at 3049). The Court nevertheless found that the statute violated equal protection because Foucha was no longer insane and could not be classified as an insanity acquittee. *Foucha,* 504 U.S. at 85–86, 112 S.Ct. at 1788. The plurality held that it was unconstitutional for the state to continue to hold Foucha simply based upon the fact he "at one time committed a criminal act and does not now prove he is not dangerous." *Foucha,* 504 U.S. at 85, 112 S.Ct. at 1788. The Court compared the state's treatment of Foucha to its treatment of criminals who have completed their prison terms. As the state law did not provide for the continued confinement of criminals based solely on their dangerousness, the state could not treat Foucha differently. Crucially, the Court's equal protection discussion was premised on the fact that Foucha could no longer be classified as an insanity acquittee. Thus, Foucha could be considered "similarly situated" to convicted criminals completing their prison terms. Unlike Foucha, petitioner remains properly classified as an insanity acquittee and, as such, may be treated differently from persons subject to civil commitment. *See Foucha,* 504 U.S. at 85–86, 112 S.Ct. at 1788.

Contrary to petitioner's reading, the plurality opinion did not hold that a state is prohibited from providing different procedures for the release of insanity acquittees and civil committees. Rather, as was the case with the due process violation, the equal protection violation was a result of the fact that Foucha admittedly was no longer insane, and, thus, was no longer truly an insanity acquittee. Conspicuously absent from the plurality opinion was any holding that the Equal Protection Clause requires a state to use the same procedures with respect to both civil committees and insanity acquittees in determining whether those persons remain mentally ill and dangerous. Indeed, in *Jones,* the petitioner argued that the equal protection clause required that the state provide insanity acquittees with a jury at their release hearings because the state provided jury trials for civil commitment hearings.

*Jones,* 463 U.S. at 362 n. 10, 103 S.Ct. at 3049 n. 10. The Court rejected this argument, explaining that an insanity acquittee's commitment is based on the judgment of insanity at the criminal trial, not solely on the findings at the release hearing, and the relevant equal protection comparison concerns the procedures available at the criminal trial and at the civil-commitment hearing. Thus, the absence of a jury at the release hearing is "justified by the fact that the acquittee has had a right to a jury determination of his sanity at the time of the offense." *Jones,* 463 U.S. at 362–63 n. 10, 103 S.Ct. at 3049 n. 10, quoting *Jones v. United States,* 432 A.2d 364 (1981).

Petitioner argues that there is no reason to distinguish among any classes of mentally ill persons. That argument is flawed because it overlooks the differences between an insanity acquittee seeking release and an individual whom the state seeks to confine solely on the basis of mental illness. The insanity acquittee has been convicted of a crime by a unanimous jury. More importantly, an insanity acquittee has chosen to put his mental illness at issue and himself convinced a jury by a preponderance of the evidence that, because he is mentally ill, he is not "guilty" and should not be punished.[14] Thus, an insanity acquittee already has received a jury determination on the issues of mental illness and dangerousness at the criminal trial. On the other hand, unlike an insanity acquittee, a civil committee is placed in the position of defending himself against a state-initiated procedure based not upon his criminal behavior, but upon "some abnormal behavior which might be perceived by some as symptomatic of a mental or emotional disorder." *Addington,* 441 U.S. at 426–27, 99 S.Ct. at 1809–10. Thus, civil commitment involves a greater risk that the state may deprive merely idiosyncratic individuals of liberty. Also, unlike civil committees, the insanity acquittee has committed a criminal offense, thereby actually demonstrating his dangerousness. Given these significant differences between insanity acquittees and other committed persons, they cannot be said to be similarly situated. *See*

---

**14.** In California, the defendant has the burden of proving insanity by a preponderance of the evidence. *In re Franklin,* 7 Cal.3d 126, 141, 101 Cal.Rptr. 553, 496 P.2d 465 (1972).

*Jones,* 463 U.S. at 367–68, 103 S.Ct. at 3051 (noting there are "important differences between the class of potential civil-commitment candidates and the class of insanity acquittees that justify differing standards of proof"); *Glatz v. Kort,* 807 F.2d 1514, 1522 (10th Cir.1986) (holding that insanity acquittees and involuntary civil committees are not similarly situated groups for equal protection purposes); *United States v. Ecker,* 543 F.2d 178, 195–96 (D.C.Cir.1976) (stating that the dangerousness demonstrated by the commission of a crime and acquittal by reason of insanity justify treating an insanity acquittee differently from a civil committee for purposes of release), *cert. denied,* 429 U.S. 1063, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977); *Lidberg v. Steffen,* 514 N.W.2d 779, 784 (Neb.1994) (holding that a mentally ill and dangerous insanity acquittee is not similarly situated to someone committed as mentally ill, and that requiring the insanity acquittee to comply with more stringent discharge provisions is rationally related to the state's legitimate interest in protecting the public).

Just as equal protection does not require that the state provide an insanity acquittee with the same procedures as a civil committee prior to commitment, *Jones,* 463 U.S. at 367–68, 103 S.Ct. at 3051–52, equal protection does not require the state to provide these different groups with the same procedures prior to release. The differences in release procedures under California law reflect the distinctions between insanity acquittees and civil committees. Consequently, the state may, consistent with the Equal Protection Clause, withhold a jury trial and place the burden of proof on the insanity acquittee at a release hearing.

**III. Petitioner's claim regarding detention of insanity acquittees in jail pending release hearings is not cognizable on habeas review.**

Petitioner argues that placing insanity acquittees in jail pending a release hearing constitutes cruel and unusual punishment be-cause the purpose of the confinement is punishment and because the acquittees are deprived of treatment while incarcerated. In addition, petitioner argues that jailing insanity acquittees pending their release hearings violates due process and equal protection. Petitioner seeks relief in the form of an injunction prohibiting the State of California from placing insanity acquittees in jail. [Supplemental Traverse at 35].

. Habeas corpus proceedings are the proper and exclusive mechanism for a prisoner to challenge the fact or duration of his confinement. *Heck v. Humphrey,* —— U.S. ——, ——, 114 S.Ct. 2364, 2369, 129 L.Ed.2d 383 (1994), citing *Preiser v. Rodriguez,* 411 U.S. 475, 489–90, 500, 93 S.Ct. 1827, 1836–37, 1841–42, 36 L.Ed.2d 439 (1973); *Young v. Kenny,* 907 F.2d 874, 876 (9th Cir.1990), *cert. denied,* 498 U.S. 1126, 111 S.Ct. 1090, 112 L.Ed.2d 1194 (1991). Challenges to the conditions of confinement are properly asserted in a civil rights action.[15] *Preiser,* 411 U.S. at 498–99, 93 S.Ct. at 1840–41.

■ Petitioner's claim regarding cruel and unusual punishment is not a challenge the legality or duration of his confinement. Rather, it involves a complaint about the conditions of confinement and is more appropriately raised in an action under 42 U.S.C. § 1983. *See, e.g., Badea,* 931 F.2d 573 (claim involving prison official's denial of prisoner's request for placement in community treatment center properly raised as a civil rights action); *Jones v. Johnson,* 781 F.2d 769 (9th Cir.1986) (pretrial detainee brought a § 1983 action seeking damages and an injunction for inadequate medical treatment in jail); *Shapley v. Nevada Bd. of State Prison Commissioners,* 766 F.2d 404 (9th Cir.1984) (prison inmate's allegation of indifference to medical needs brought in civil rights action). If petitioner succeeded on this claim, the result would not be his immediate or speedier release, but only a change in the location of his

---

**15.** Although the Supreme Court, in a footnote, arguably left open the question whether a petitioner may use habeas corpus to challenge the conditions of confinement, *Bell v. Wolfish,* 441 U.S. 520, 526 n. 6, 99 S.Ct. 1861, 1868 n. 6, 60 L.Ed.2d 447 (1979), the Ninth Circuit has made clear that habeas petitions are limited to attacks upon the legality or duration of confinement. *Crawford v. Bell,* 599 F.2d 890, 891 (9th Cir. 1979); *Badea v. Cox,* 931 F.2d 573, 574 (9th Cir.1991).

**1348**

confinement.[16] As such, the claim should be raised in a civil rights action. The Court, therefore, need not address the merits of this claim as presented.[17]

## IV. Petitioner's claim regarding the conditional release program is not cognizable on habeas review.

Petitioner claims that the Section 1026.2's conditional release program (1) violates the California Procedure Act and (2) leaves community program directors to do whatever they wish to petitioner in violation of due process and equal protection. [Supplemental Traverse at 29].

■ To the extent that petitioner's claim challenges the validity of the conditional release program under the California Procedure Act, it fails to raise a federal question cognizable on habeas review. This Court has jurisdiction to entertain an application for writ of habeas corpus only where a petitioner alleges that he is in custody in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67–69, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir.1983). Federal habeas corpus relief is not available for an alleged error in the interpretation or application of state law. *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir.1985).

To the extent that petitioner claims that the conditional release program deprives insanity acquittees of due process, however, he does present a federal question.[18] Since petitioner argues that the California legislature improperly delegated too much discretion to the California State Department of Mental Health, he has raised a federal claim that the Department of Mental Health is improperly empowered to deprive petitioner of his liberty without complying with the requirements of due process.

■ While petitioner's claim presents a federal question, it is actually a challenge to the conditions of confinement rather than to the legality or duration of confinement. In an analogous context, courts have consistently held that challenges to the constitutionality of parole procedures are properly raised in civil rights actions. For example, in *Georgevich v. Strauss*, 772 F.2d 1078 (3d Cir.1985) (en banc), *cert. denied*, 475 U.S. 1028, 106 S.Ct. 1229, 89 L.Ed.2d 339 (1986), state prisoners challenged the state parole procedures on equal protection grounds. The Third Circuit held that the claim was properly raised as civil rights action because the prisoners did not seek release on parole, but only sought uniform application of due process procedures in making parole decisions for all prisoners. *Georgevich*, 772 F.2d at 1087. The Court explained that the prisoners "did not challenge the outcome of any parole decisions already made, but instead sought declaratory and injunctive relief to challenge the manner in which decisions were made." *Georgevich*, 772 F.2d at 1087. Thus, claims relating to the manner in which decisions are made go not to the fact or duration of confinement, but rather to the fairness of the decisionmaking process. Accordingly, such challenges are appropriately raised in an action pursuant to Section 1983. *See also, Walker v. Prisoner Review Bd.*, 694 F.2d 499, 501 (7th Cir.1982) (holding that Section 1983 was the appropriate basis for attack on parole practices, where plaintiff

---

**16.** It is important to note that petitioner is not presently confined in county jail, and, consequently, is not seeking release from such confinement. Rather, petitioner seeks an injunction prohibiting California from using county jails to confine insanity acquittees in the future.

**17.** Courts sometimes construe a *pro se* petitioner's habeas petition challenging the conditions of confinement as a civil rights action under Section 1983. *See Wilwording*, 404 U.S. at 251, 92 S.Ct. at 409. Petitioner, however, is represented by counsel and, therefore, the liberal treatment afforded *pro se* pleadings is inapplicable. Further, petitioner is not prejudiced by the Court's

refusal to reach the merits of his claim as he can obtain a judicial determination of his claim by filing a civil rights action.

**18.** Petitioner's argument is that the conditional release program operates without standards, allowing the Department of Mental Health to make determinations without proper guidance regarding (1) who they will accept as outpatients in their programs, (2) the appropriate treatment and medication, (3) release from the mental hospital, (4) community placement, and (5) lifestyles of the acquittees. [Petitioner's Points & Authorities at 21–22].

sought an injunction requiring hearing by parole board complying with due process, and explaining that an action under Section 1983 was appropriate regardless of the fact that "the relief sought might have improved petitioner's chance of parole. . . ."); *Strader v. Troy*, 571 F.2d 1263, 1269 (4th Cir.1978) (holding a state prisoner's *pro se* habeas petition should have been considered as a Section 1983 suit because the prisoner did "not assert that he is entitled to parole and should be released; he argues only that the parole board should consider his eligibility for parole without regard to [allegedly unconstitutional criteria]."

As in the cases attacking the constitutionality of parole procedures, petitioner challenges the constitutionality of the procedures employed in the conditional release program, including the allegedly unconstitutional delegation of discretion to the Mental Health Department. A successful attack on the constitutionality of the procedures employed in the conditional release program would not entitle petitioner to release. Rather, it would result in a requirement that the California legislature formulate more precise standards to be employed by the Department of Mental Health in managing the conditional release program. There is no direct relationship between the conditional release program and an insanity acquittee's release date. While Department of Mental Health personnel may make recommendations regarding the release of insanity acquittees, the ultimate authority regarding release remains with the court. *See* Cal.Penal Code §§ 1026.2(e), (h) & (*l*). Even if constitutionally adequate procedures would improve petitioner's chances of successful participation in a conditional release program, injunctive relief prohibiting the use of the conditional release program would not alter the *state court's* ultimate discretion to grant or deny petitioner's application for release. Thus, like the procedures employed in parole hearings, the standards and procedures employed

in the conditional release program do not sufficiently affect the duration of petitioner's confinement to subject them to federal habeas review.

As petitioner's claim does not involve a challenge to the legality or duration of his confinement, it is more properly raised in a civil rights action. *Preiser*, 411 U.S. at 498–99, 93 S.Ct. at 1840–41. The Court, therefore, need not reach the merits of this claim.

## V. Petitioner's conviction of second-degree murder withstands constitutional scrutiny.

■ Petitioner claims that, as a matter of law, he did not formulate malice and, therefore, he could not properly be found guilty of second degree murder. [Petitioner's Points & Authorities at 23–24]. Despite petitioner's allegation that under these circumstances, his conviction violated due process and equal protection, the exact basis for petitioner's claim is not clear. To the extent petitioner complains that the trial judge misapplied the law of imperfect self-defense, the claim involves only an alleged error in the interpretation or application of state law. An error of state law may constitute a sufficient basis for federal habeas relief, however, where it rendered the proceedings so fundamentally unfair that petitioner was denied due process. *Estelle*, 502 U.S. at 72–73, 112 S.Ct. at 482; *Jeffries v. Blodgett*, 5 F.3d 1180, 1195 (9th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1294, 127 L.Ed.2d 647 (1994).

Under California law, second-degree murder is defined as the unlawful killing of a human being with malice aforethought. Cal.Penal Code § 187.[19] Yet, under the imperfect self-defense doctrine, a killing amounts to voluntary manslaughter if the defendant acts with an honest but unreasonable belief that it is necessary to defend himself from imminent threat to life or great bodily injury. CALJIC 8.40; *People v. Aris*, 215 Cal.App.3d 1178, 1186, 264 Cal.Rptr. 167 (1989). The California Supreme Court has

---

**19.** Section 188 further defines the requisite malice as either express or implied. Express malice is defined as a manifest intention to unlawfully kill a human being. Cal.Penal Code § 188. Implied malice is defined as a killing resulting from an intentional act, the natural consequences of

which are dangerous to human life, and which is deliberately performed with knowledge of the danger to and in conscious disregard for human life. *See People v. Mattison*, 4 Cal.3d 177, 93 Cal.Rptr. 185, 481 P.2d 193 (1971).

explained that the imperfect self-defense doctrine is narrow and requires that the defendant had an *actual* fear of *imminent* danger to his life or great bodily injury. *In re Christian S.*, 7 Cal.4th 768, 783, 30 Cal. Rptr.2d 33, 872 P.2d 574 (1994). Further, the California Supreme Court explained that "the peril must appear to the defendant as immediate and present and not prospective or even in the near future." *In re Christian,* 7 Cal.4th at 783, 30 Cal.Rptr.2d 33, 872 P.2d 574, quoting *Aris,* 215 Cal.App.3d at 1187–89, 264 Cal.Rptr. 167. Whether the defendant actually held the requisite belief is to be determined by the trier of fact based upon all of the relevant facts. *In re Christian,* 7 Cal.4th at 783, 30 Cal.Rptr.2d 33, 872 P.2d 574. If the trier of fact does not find that defendant had such an actual fear of imminent harm, "imperfect self-defense is no defense." *In re Christian,* 7 Cal.4th at 783, 30 Cal.Rptr.2d 33, 872 P.2d 574.

▮▮▮ Petitioner argues that the trial judge erroneously incorporated a requirement of "reasonable belief" in the imperfect self-defense doctrine. Petitioner's claim rests on the trial judge's refusal to apply the doctrine of imperfect self-defense:

> If Defendant had acted out of fear, it was not reasonably justified by the circumstances as the *Flannel*[20] case would require. This I concluded from reviewing the facts that the defendant repeatedly struck out at the victim even after he was down. The defendant being the younger man, even if the uncle was armed with a sap, the victim was disabled and on the ground and there was no longer any reasonably founded belief of imminent peril to life or great bodily injury.

[Petitioner's Points & Authorities at 24, quoting Reporter's Transcript of May 10, 1991, at 3–4].

Petitioner's underlying criminal trial was conducted by a judge, without a jury. The trial judge considered the evidence, made credibility determinations, and set forth the facts as he found them to be. [Reporter's Transcript ("R.T.") of May 10, 1991, at 1–6]. The trial judge found that petitioner "went

towards his uncle, when he [his uncle] tried to come to the aid of the women, and struck his uncle. His uncle, after he went down on all fours, then the defendant repeatedly struck his uncle." [R.T. of May 10, 1991 at 2]. Further, the trial judge considered the *Flannel* case, and found that, at the time of the killing, petitioner "did not believe that he was in imminent peril for his life" nor that "he was about to suffer great bodily injury." [R.T. of May 10, 1991 at 3]. To the contrary, the trial judge found that petitioner's actions were motivated by his fear of returning to a mental hospital:

> Why did the defendant act in this way? Because he knew his parents were trying to return him to Las Encinas Hospital and he did not want to go. He was retaliating against that decision. He was not afraid of his uncle, but he was in fear of being returned to the hospital setting.... And his actions so indicated by striking first at his mother, who he considered a party to return [sic] to Las Encinas, and then to anyone else who got in his way.

[R.T. of May 10, 1991 at 3].

The trial judge also commented that "[i]f petitioner had acted out of fear, it was not reasonably justified by the circumstances as the *Flannel* case would require." [R.T. of May 10, 1991, at 3]. On its own, this comment could be read as indicative of the trial judge's misunderstanding the imperfect self-defense doctrine as requiring a *reasonable* belief of imminent peril. In context of the trial judge's factual findings, however, it is evident that his refusal to apply the doctrine was based upon his finding that petitioner did not kill his uncle out of fear of imminent death or great bodily injury, but out of "fear of being returned to the hospital setting." [R.T. at 3]. Thus, the trial judge found that petitioner did not have the requisite *actual* fear of *imminent* peril permitting application of the imperfect self-defense doctrine.

The trial judge's determination constitutes a factual finding made after a hearing on the merits. Such a factual finding is presumed

**20.** *People v. Flannel,* 25 Cal.3d 668, 160 Cal.     Rptr. 84, 603 P.2d 1 (1979).

to be correct absent one of eight exceptions.[21] 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 551, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981); *Payne v. Borg,* 982 F.2d 335, 339 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 131, 126 L.Ed.2d 94 (1993). In the absence of one of the enumerated exceptions, the burden rests on the petitioner to establish by convincing evidence that the factual determination of the state court was erroneous. *Sumner,* 449 U.S. at 551, 101 S.Ct. at 771, quoting 28 U.S.C. § 2254(d). Petitioner has not demonstrated either (1) that one of the exceptions to the presumption applies or (2) that the trial judge's factual determination was erroneous.[22] Thus, this Court must presume that the trial judge's finding that petitioner lacked the actual fear of imminent danger to his life at the time he killed his uncle is correct. Accordingly, petitioner was not entitled to the benefit of the imperfect self-defense doctrine. *In re Christian,* 7 Cal.4th at 783, 30 Cal.Rptr.2d 33, 872 P.2d 574. It follows that the trial judge's refusal to apply the doctrine neither deprived petitioner of any constitutional right nor rendered his trial fundamentally unfair.

## CONCLUSION

Petitioner is not entitled to a writ of habeas corpus. It is recommended that the Court issue an Order (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered dismissing the Petition with prejudice.

---

**21.** One of the exceptions to 28 U.S.C. § 2254(d)'s presumption of correctness is that the petitioner did not receive a full, fair, and adequate hearing in the state court proceeding.

**22.** In his Supplemental Traverse, petitioner claims that he did not receive a full and fair hearing in state court and was denied due process by the trial judge's refusal to accept imperfect self-defense. [Supplemental Traverse at 34].

Petitioner presents no facts regarding why or how he did not receive a full and fair hearing. Furthermore, review of the record reveals that petitioner did receive a full and fair opportunity to present his argument regarding imperfect self-defense. [R.T. of May 10, 1991 at 1–6, 80–92]. Petitioner's conclusory allegation to the contrary is not sufficient to overcome the presumption of correctness contained in 28 U.S.C. § 2254(d).